DECISION AND JUDGMENT
{¶ 1} Appellant, Allen Walker, appeals from his convictions for aggravated robbery, kidnapping and aggravated burglary. For the reasons that follow, we affirm.
 {¶ 2} In the early morning hours of August 28, 2006, the victim was reading in her bed when she heard some noises in her kitchen. She investigated but did not find anything out of place so she went back to bed and fell asleep. Later, she was awakened *Page 2 
when someone threw a blanket over her head and tied her hands behind her back. A male told her he wanted money. He then asked her for her bank card and her personal identification number. After she told him the number, the man tied her feet and hands together and had her stand up. As she hopped along, the man guided her to the bathroom where he had her lay face down in the bathtub. He told her to remain in the bathtub and he left. When she heard the man leave, she untied herself and ran out of the house. Outside, she called the police on her cell phone. While waiting for the police and hiding under a bush, she watched a man, driving her car, pull into her driveway. The man got out of her car and disappeared around the corner of her house. From a photo array, the victim identified appellant as the perpetrator.
 {¶ 3} On September 12, 2006, appellant was indicted for burglarizing the victim's home and for the robbery and kidnapping of the victim. A jury found appellant guilty on all counts on April 6, 2007. He was sentenced to 27 years in prison. Appellant appeals setting forth the following assignments of error:
 {¶ 4} "I. The trial court erred in denying defendant's motion in limine and allowing testimony of other acts into evidence at trial.
 {¶ 5} "II. The trial court's failure to find kidnapping and aggravated robbery are allied offenses of similar import was erroneous and resulted in the wrongful conviction of a crime and increased loss of liberty.
 {¶ 6} "III. The trial court erred in denying defendant's motion to suppress the photo identification of the defendant by the victim. *Page 3 
 {¶ 7} "IV. The prosecution did not produce sufficient evidence of serious physical harm to convict Mr. Walker of aggravated robbery and this finding was against the manifest weight of the evidence.
 {¶ 8} "V. The jury's finding that Mr. Walker was guilty of aggravated robbery, aggravated burglary and kidnapping was against the manifest weight of the evidence and should be overturned.
 {¶ 9} "VI. Defendant was denied a fair trial because of ineffective assistance of counsel.
 {¶ 10} "VII. The above errors, when taken together, deprived appellant of a fair trial as guaranteed by the due process clause of the constitution."
 {¶ 11} In his supplemental brief, appellant sets forth a supplemental assignment of error for review:
 {¶ 12} "I. Appellant's convictions for aggravated robbery under R.C. 2911.01(A)(3) and aggravated burglary under R.C. 2911.11(A)(1) should be vacated because the indictment failed to charge the mens rea required for each of these crimes and therefore rendered the indictment defective and created a plain error that warrants reversal."
 {¶ 13} In his first assignment of error, appellant contends the court erred in denying his motion in limine.
 {¶ 14} A motion in limine is a request "that the court limit or exclude use of evidence which the movant believes to be improper, and is made in advance of the actual *Page 4 
presentation of the evidence to the trier of fact, usually prior to trial. The motion asks the court to exclude the evidence unless and until the court is first shown that the material is relevant and proper." State v. Winston (1991), 71 Ohio App.3d 154, 158. Thus, because a trial court's decision on a motion in limine is a ruling to exclude or admit evidence, our standard of review on appeal is whether the trial court committed an abuse of discretion that amounted to prejudicial error. State v. Graham (1979), 58 Ohio St.2d 350. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 15} Appellant sought to exclude evidence that people in the victim's neighborhood had called 911 to report a suspicious man walking around houses and looking into windows. The calls were received on August 29, August 30 and August 31, 2006, just days after the burglary at the victim's home. One of the callers was able to give the license plate number of the car, a silver Ford Taurus that the suspicious man was driving. This information ultimately led to police using a picture of appellant in a photo array. The victim identified appellant from the photo array. Appellant contends this evidence was irrelevant because he was not charged with any crime regarding the above activity and the above activity is different from the acts he was convicted of committing at the victim's home.
 {¶ 16} Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *Page 5 
Evid. R. 404(B). However, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity or any of the other enumerated purposes under Evid. R. 404(B). State v. Broom (1988), 40 Ohio St.3d 277. In order to be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share common features with the crime in question." State v. Lowe, 69 Ohio St.3d 527, 1994-Ohio-345, paragraph one of the syllabus.
 {¶ 17} The state contends that the evidence demonstrated proof of opportunity, intent, preparation, plan, knowledge and absence of mistake. First, the activity was observed in the victim's neighborhood immediately after her home was burglarized. One of the callers lived only one street away from the victim. Second, further investigation revealed that at the home of one of the callers, a back window screen had been cut. The evidence in this case shows that appellant entered the victim's home through her back window, after cutting her screen.
 {¶ 18} Based on the common features of the other acts evidence and the crimes at issue, we find that the evidence was relevant for purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Accordingly, the trial court did not err in denying appellant's motion in limine. Appellant's first assignment of error is found not well-taken. *Page 6 
 {¶ 19} In his second assignment of error, appellant argues the trial court erred in sentencing him to separate sentences on the kidnapping and aggravated robbery charges. Appellant asserts the charges constitute allied offenses of similar import, pursuant to R.C. 2941.25(A). The statute reads:
 {¶ 20} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."
 {¶ 21} The elements of kidnapping, as defined in R.C.2905.01(A)(2), are as follows:
 {¶ 22} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 23} "(2) To facilitate the commission of any felony or flight thereafter"
 {¶ 24} The elements of aggravated robbery, as defined in R .C. 2911.01(A)(1), are as follows:
 {¶ 25} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 26} "(3) Inflict, or attempt to inflict, serious physical harm on another." *Page 7 
 {¶ 27} We recognize that when a person commits the crime of robbery, he must, by the very nature of the crime, restrain the victim for a sufficient amount of time to complete the robbery. State v. Logan
(1979), 60 Ohio St.2d 126, 131. In Logan, id., the Supreme Court of Ohio addressed the issue of whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B). The syllabus states, in pertinent part:
 {¶ 28} "Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions."
 {¶ 29} Here, there exists a separate animus as to each offense. The victim was first robbed and then taken to a different room where her feet and hands were tied, significantly delaying her escape. See, also,State v. Williams, 8th Dist. No. 85327, 2005-Ohio-3715 (act of binding the victims and leaving them to free themselves was not merely incidental to the robberies but had a significance independent of the robberies). Appellant's second assignment of error is found not well-taken.
 {¶ 30} In his third assignment of error, appellant contends that the court erred in denying his motion to suppress evidence of his pretrial identification. Specifically, appellant contends that he was identified from a suggestive and unreliable photo array. *Page 8 
 {¶ 31} When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness.State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Guysinger (1993), 86 Ohio App.3d 592, 594.
 {¶ 32} Due process requires suppression of an out-of-court identification if the confrontation procedure was "unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." State v. Davis (1996), 76 Ohio St.3d 107,112, citing State v. Waddy (1992), 63 Ohio St.3d 424, 438; Manson v.Brathwaite (1977), 432 U.S. 98, 116; Neil v. Biggers (1972),409 U.S. 188, 196-198. Suppression is warranted where the confrontation procedure employed and the unreliability of the witness's identification gives rise to a "substantial likelihood of irreparable misidentification."Simmons v. United States (1968), 390 U.S. 377, 384. No due process violation occurs when an identification was not tainted by a suggestive confrontation procedure, but is "instead the result of observations at the time of the crime." State v. Davis, supra at 112, citing Coleman v.Alabama (1970), 399 U.S. 1, 5-6. Additionally, if an out-of-court identification procedure is unnecessarily suggestive, the in-court identification could be suppressed as violative of due process if it is "tainted" by the out-of-court identification. Stovall v. Denno (1967),388 U.S. 293. *Page 9 
 {¶ 33} Even if the out-of-court confrontation procedure was unduly suggestive, however, the identification does not violate due process and is therefore admissible if the identification is reliable given the "totality of the circumstances." State v. Moody (1978),55 Ohio St.2d 64, 67. The factors to be considered under the totality of the circumstances, to determine an identification's reliability, articulated in Neil v. Biggers, supra, "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199-200.
 {¶ 34} Appellant finds fault in the photo array for the following reasons: (1) the victim did not view the photos until four days after the incident, (2) all of the men in the photo array had facial hair despite the fact that the victim did not mention facial hair in describing the perpetrator, (3) appellant's picture, identifying him as a suspect, was circulating in the victim's neighborhood at the time of the photo array, and (4) the victim only saw the perpetrator's face for 15 seconds.
 {¶ 35} At the suppression hearing, the victim testified that she saw appellant's face from approximately 30 feet away when he exited her car. Although it was dark, the car's dome light was briefly on. The victim testified that she does not need glasses to see distance. When the police showed her the photo array, she testified she immediately knew appellant was the man who broke into her house days ago. She also testified that at *Page 10 
the time, she was unaware that appellant's picture had been circulating in her neighborhood.
 {¶ 36} Detective Kim Violanti of the Toledo Police Department testified that she showed the photo array to the victim based on the victim's description of an African American man, in his thirties, with a bald head or a very close haircut. Detective Violanti testified that the victim looked at each of the photos and upon viewing appellant's photo, she had a physical response that the detective described as "a moment of recognition." The victim then unequivocally identified appellant as the perpetrator.
 {¶ 37} The photo array in the present case contained photos of six African American men with features similar to appellant and all, including appellant, exhibiting some facial hair. We find nothing so suggestive about the composition of the photo array that there is a substantial likelihood of misidentification. While the victim only briefly viewed the perpetrator, she did so no doubt for the sole purpose of later identifying him. Given the trauma experienced by the victim, four days is not so long between the incident and her identification. These factors taken together with the fact that the victim never hesitated in identifying appellant lead us to conclude that the photo array and presentation was admissible since the evidence was neither unduly suggestive nor unreliable. Appellant's third assignment of error is found not well-taken.
 {¶ 38} In his fourth assignment of error, appellant contends that his conviction for aggravated robbery is against the manifest weight of the evidence. Specifically, appellant contends that the state failed to prove the element of serious physical harm. *Page 11 
 {¶ 39} To determine whether a verdict is against the manifest weight of the evidence the appellate court "weighs the evidence and all reasonable inferences, and considers the credibility of witnesses."State v. Thompkins (1997), 78 Ohio St.3d 380, 387. The appellate court acts as a "thirteenth juror" and may disagree with the jury's resolution of conflicting testimony. Id. If the jury "clearly lost its way and created such a manifest miscarriage of justice," then the court may reverse the conviction and order a new trial. Id.
 {¶ 40} The elements of aggravated robbery, a violation of R.C. 2911.01(A)(3), are as follows:
 {¶ 41} "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 42} "* * *
 {¶ 43} "Inflict, or attempt to inflict, serious physical harm on another."
 {¶ 44} R.C. 2901.01(A)(5) defines serious physical harm as:
 {¶ 45} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 46} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 47} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; *Page 12 
 {¶ 48} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 49} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 50} The victim testified that appellant tied the rope to her wrists and ankles so tight that her capillaries were broken, leaving her ligature marks. She also testified that after appellant bound her, she was in fear for her life. While it is true that the victim's injuries did not require medical treatment, we note that unlike the felonious assault statute, the aggravated robbery statute does not require the defendant to actually cause serious physical harm. It is enough for aggravated robbery if the defendant attempts to cause serious physical harm. See State v. Sharp, 8th Dist. No. 87709, 2006-Ohio-6413. Given the facts of this case and after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found beyond a reasonable doubt that, at the very least, appellant attempted to inflict serious physical harm upon the victim. Appellant's fourth assignment of error is found not well-taken.
 {¶ 51} In his fifth assignment of error, appellant contends his convictions for aggravated robbery, aggravated burglary and kidnapping are against the manifest weight of the evidence. Appellant contends that the admission of irrelevant evidence confused the jury and led them to unjustly convict him. The irrelevant evidence to which appellant refers is the admission of the victim's identification of appellant based on the photo array and the admission of other acts evidence which was the subject of appellant's motion in *Page 13 
limine. Having already determined that this evidence was relevant and admissible, we find appellant's fifth assignment of error not well-taken.
 {¶ 52} In his sixth assignment of error, appellant contends he was denied effective assistance of counsel. Two objective factors must be proven to establish ineffective assistance of counsel. Strickland v.Washington (1984), 466 U.S. 668, 687. "First, the defendant must show that counsel's performance was deficient." Id. "Second, the defendant must show that the deficient performance prejudiced the defense." Id. The counsel's errors must have been serious enough to disrupt the protections afforded through the Sixth Amendment and the defendant's right to a fair trial. Id. An attorney's trial strategy does not usually provide for a claim of ineffective assistance of counsel. State v.Gaston, 6th Dist. No. L-06-1183, 2008-Ohio-1856. Courts give deference to the strategy of an appointed counsel and tend to presume that counsel acted in a reasonable manner. Id. In Ohio, a properly licensed attorney is presumed competent and the burden is on the appellant to show counsel's ineffectiveness. State v. Lytle (1976), 48 Ohio St.2d 391;State v. Hamblin (1988), 37 Ohio St.3d 153.
 {¶ 53} Appellant first contends that his counsel was ineffective in failing to adequately prepare for the testimony of defense witness, Charna Holston. Holston was the owner of the Taurus appellant was seen driving in August 2006, and she is the mother of appellant's child. She testified that appellant did not use her car in August 2006, and the only time she saw appellant in August 2006, was on August 29. On cross-examination, the state produced a taped interview that the police conducted with Holston *Page 14 
wherein she states that "to the best of her knowledge," appellant did not use her car in August 2006. She also states that she saw appellant on August 25 and 29, 2006. Appellant contends that his counsel should have procured this taped interview before trial to be better prepared for Holston's inconsistent testimony.
 {¶ 54} The inconsistencies in Holston's testimony are relatively minor compared to the evidence against appellant in this case. Appellant's counsel, in fact, encouraged the state to play the tape of the interview for the jury which the state did. We can only assume that counsel's conduct with regard to the tape amounted to a trial strategy, and as such, we are disinclined to find counsel's representation ineffective.
 {¶ 55} Appellant also contends that his counsel was ineffective in failing to argue at sentencing that aggravated robbery and kidnapping are allied offenses. Finally, appellant contends his counsel was ineffective in failing to object at trial to the admission of evidence regarding the 911 phone calls. These arguments appellant contends his counsel should have raised have already been rejected in appellant's prior assignments of error. Appellant's sixth assignment of error is found not well-taken.
 {¶ 56} In his seventh assignment of error, appellant contends that all of the errors combined resulted in his unfair trial. "Separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. State v. Madrigal (2000),87 Ohio St.3d 378, 397. In order to find cumulative error present, we first must find that multiple errors were committed at trial. See id. at 398." State v.Durnwald, *Page 15 163 Ohio App.3d 361, 2005-Ohio-4867. Having found no error in the proceedings below, appellant's seventh assignment of error is found not well-taken.
 {¶ 57} Appellant's supplemental assignment of error centers around the Supreme Court of Ohio's recent decisions in State v. Colon,118 Ohio St.3d 26, 2008-Ohio-1624 ("Colon I"), and State v. Colon, Slip Opinion,2008-Ohio-3749 ("Colon II"). In Colon I, the defendant, Vincent Colon, was convicted by a jury of the offense of robbery in violation of R.C. 2911.02(A)(2). His indictment read as follows: "[I]n attempting or committing a theft offense, as defined in Section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense upon [the victim, the defendant did] inflict, attempt to inflict, or threaten to inflict physical harm on [the victim]." The Supreme Court of Ohio reversed his conviction finding that his indictment was defective. Specifically, the indictment omitted a mens rea element for the crime. Recognizing that the robbery statute does not expressly state the degree of culpability required for subsection (2), which states, "Inflict, attempt to inflict, or threaten to inflict physical harm on another," the court noted that:
 {¶ 58} "[t]he mental state of the offender is a part of every criminal offense in Ohio, except those that plainly impose strict liability. SeeState v. Lozier, 101 Ohio St.3d 161, 2004-Ohio-732, ¶ 18. Under R.C. 2901.21(A)(2), in order to be found guilty of a criminal offense, a person must have `the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense.' * * *" R.C. 2901.21(B) states that "[w]hen the section defining an offense does not specify any *Page 16 
degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
 {¶ 59} The state of Ohio did not dispute the fact that Colon's indictment was defective for failing to charge an essential element of the crime of robbery, that is, that the physical harm was recklessly inflicted. It was the state's contention, however, that because Colon did not raise the issue before his trial, he waived the argument that his indictment was defective. The Supreme Court of Ohio disagreed.
 {¶ 60} The court found the defective indictment to be "structural error." Colon I, ¶ 20.
 {¶ 61} "Structural errors are constitutional errors that defy analysis by `harmless error' standards because they affect the framework in which the trial proceeds, rather than just being error in the trial process itself. (Citation omitted) Structural error permeates the entire conduct of a trial so that the trial cannot reliably serve its function as a means for determining guilt or innocence. Arizona v. Fulminante (1991),499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302. A structural error mandates a finding of `per se prejudice.' State v. Colon, * * * and results in `automatic reversal.' State v. Payne, 114 Ohio St.3d 502,505, 2007-Ohio-4642." State v. Dayem, 8th Dist. No. 90477,2008-Ohio-4095. *Page 17 
 {¶ 62} The Colon I court concluded:
 {¶ 63} "A defendant has a constitutional right to grand jury indictment and to notice of all the essential elements of an offense with which he is charged. The state must meet its duty to properly indict a defendant, and we will not excuse the state's error at the cost of a defendant's longstanding constitutional right to a proper indictment. When a defective indictment so permeates a defendant's trial such that the trial court cannot reliably serve its function as a vehicle for determination of guilt or innocence, the defective indictment will be held to be structural error." Id. ¶ 44.
 {¶ 64} The court further found that a defendant who fails to raise the issue of an indictment omitting the mens rea element of a crime in the trial court does not waive the defect. ¶ 45.
 {¶ 65} In Colon II, before the court on a motion for reconsideration, the court clarified that its ruling in Colon I was to be applied prospectively, meaning, it is applicable only to those cases pending on the date Colon I was announced. ¶ 5. More importantly, for purposes of this case, the court emphasized that the holding of Colon I is based on a set of unique facts and that a situation in which a court will need to apply a structural error analysis to a defective indictment will be a rare situation. ¶ 6-7. Such a situation is one in which "* * * multiple errors at the trial follow the defective indictment." The court identified the following multiple errors in Colon's trial: (1) he had no notice that the mens rea element to the crime of robbery was recklessness, (2) the state did not attempt to prove the element of recklessness, and (3) the trial court did not *Page 18 
instruct the jury on a mens rea element of recklessness and in fact, (4) the state in closing argument treated robbery as a strict liability offense.
 {¶ 66} In his supplemental assignment of error, citing Colon I, appellant contends that his convictions for aggravated robbery, pursuant to R.C. 2911.01(A)(3), and aggravated burglary, pursuant to R.C. 2911.11(A)(1), should be reversed because the indictment failed to charge the mens rea required to be convicted of aggravated robbery and aggravated burglary. Appellant's indictment for aggravated robbery reads as follows:
 {¶ 67} "* * * [appellant], on or about the 28th day of August, 2006, * * * in attempting or committing a theft offense as defined in R.C. 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, did inflict, or attempt to inflict, serious physical harm on another * * *." Appellant's indictment for aggravated burglary reads as follows: "* * * [appellant], on or about the 28th day of August 2006, * * * by force, stealth, or deception, did trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender was present, with purpose to commit in the structure or in the separately secured or separately occupied portion or the structure any criminal offense, and the offender inflicted or attempted or threatened to inflict physical harm on another * * *."
 {¶ 68} As in Colon I, appellant's indictment omits a mens rea element for the offenses of aggravated robbery and aggravated burglary. The trial court in this case did, *Page 19 
however, instruct the jury on a mens rea element for both aggravated robbery and aggravated burglary, namely, "knowingly."
 {¶ 69} The Tenth District Court of Appeals recently applied ColonI and Colon II in State v. Hill, 10th Dist. No. 07AP-889,2008-Ohio-4257. Hill was convicted by a jury of aggravated robbery and robbery. First we will look at Hill's conviction for robbery. As inColon I, Hill's indictment failed to charge that physical harm was recklessly inflicted, the jury was not instructed on the mens rea of recklessness, and the state made no reference to the mens rea element of recklessness in closing argument. Applying a structural error analysis, the court found that the defective indictment "* * * so permeated defendant's trial such that the trial court could not reliably have served its function as vehicle for determining defendant's guilt or innocence." Applying Colon I and II, the court found that Hill's conviction for robbery could not stand. Id. at ¶ 26.
 {¶ 70} The Hill court reached a different conclusion with regard to Hill's conviction for aggravated robbery pursuant to R.C. 2911.01. Relying more on Colon II wherein the Supreme Court of Ohio emphasized that the facts leading to their decision in Colon I were "unique" and that the syllabus in Colon I is confined to the facts in that case, the court declined to apply Colon I to Hill's conviction for aggravated robbery because Colon I construed the robbery statute under R.C. 2911.02, not the aggravated robbery statute under R.C. 2911.01. TheHill court stated:
 {¶ 71} "[A]s an intermediate appellate court, we are therefore reluctant to expansively construe Colon I's holding to statutes not considered by Colon I, especially *Page 20 
since Colon II emphasized that the syllabus in Colon I is confined to the facts in that case. See, generally, James A. Keller, Inc. v.Flaherty (1991), 74 Ohio App.3d 788, 792 (acknowledging that the Supreme Court of Ohio is the primary judicial policy maker and stating that `[a]s an intermediate appellate court, we should use caution in determining that the public policy of this state should be')." ¶ 34.
 {¶ 72} Finding the pertinent facts in this case indistinguishable fromState v. Hill, supra, we find appellant's supplemental assignment of error not well-taken and Colon I and Colon II inapplicable as appellant was not indicted for the offense of robbery in violation of R.C. 2911.02(A)(2), the statute construed by the Colon court.
 {¶ 73} On consideration whereof, the judgment of the trial court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4. *Page 21 
 Arlene Singer, J., William J. Skow, J., Thomas J. Osowik, J., Concur. *Page 1