DECISION. *Page 2 
{¶ 1} In the case numbered C-070782, defendant-appellant, Darryl Love, appeals the judgment of the Hamilton County Court of Common Pleas convicting him of attempted murder, felonious assault, aggravated robbery, aggravated burglary, and kidnapping, with firearm specifications. And in the case numbered C-080078, Love appeals the trial court's denial of his motion for a new trial.
 The Shooting and its Aftermath {¶ 2} Antoinne Morrison testified that, one night after 11:00 p.m., Love had called him on the telephone and asked him to come out of his apartment. When Morrison went into the hallway of his apartment building, he saw that Love and Donnell Heath were there.
 {¶ 3} Love shot Morrison in the abdomen and went into his apartment. Heath then chased Morrison to the parking lot of the apartment complex, where he attempted to force him into the trunk of a car. According to Morrison, Heath shot him several times on the way to the parking lot.
 {¶ 4} Meanwhile, according to Morrison's girlfriend, Tiffany Givens, a man had come into the apartment and ordered her to the floor at gunpoint. He then ransacked the apartment, overturning furniture and rifling through drawers. Givens testified that the man had taken two sets of keys before leaving.
 {¶ 5} According to Morrison, he had seen Love join Heath in the parking lot. Although Morrison believed that Love had fled soon after joining Heath and that he had not helped Heath force him into the trunk, a neighbor testified that the men had acted together in carrying Morrison to the car.
 {¶ 6} The police arrived, and Love and Heath fled. Love was soon apprehended near the apartment complex, and forensic tests revealed the presence of gunshot residue on his hands. *Page 3 
 {¶ 7} When questioned by the police, Love denied any involvement in the offenses. Love's mother, Margie Fry, testified on his behalf. According to Fry, she had heard Morrison state that he had wrongly accused Love of committing the offenses to avenge Love's refusal to identify the real culprit.
 {¶ 8} The jury found Love guilty of the offenses and specifications, and the trial court sentenced him to an aggregate of 54 years in prison. A lesser charge of robbery and an additional count of felonious assault were merged with the other offenses for purposes of sentencing.
 Colon and Plain Error {¶ 9} In his first assignment of error, Love now argues that the omission of mens rea allegations in the indictment for aggravated robbery and robbery mandated the reversal of those convictions.
 {¶ 10} We first note that the trial court merged the robbery conviction with the aggravated robbery, and there was therefore no prejudice in the finding of guilt for robbery. Also, Love failed to object to the terms of the indictment with respect to the mens rea elements for aggravated robbery.
 {¶ 11} In State v. Colon (Colon I), the Supreme Court of Ohio held that the omission of a mens rea allegation in the indictment was a structural defect that rendered the conviction improper.[1] But inState v. Colon (Colon II), [2] the court held that the holding inColon I was confined to its specific facts, noting that rarely will the absence of a mens rea allegation in the indictment permeate the proceedings to such an extent that a conviction would be invalid.[3]
 {¶ 12} Moreover, if the defect in the indictment does not permeate the proceedings and the defendant fails to object to the alleged defect, an appellate court *Page 4 
is to review the proceedings for plain error.[4] Under the plain-error standard, an appellate court will reverse a judgment only where the outcome clearly would have been different absent the alleged error.[5]
 {¶ 13} In this case, the absence of mens rea allegations in the indictment did not result in a structural defect, and the trial court did not commit plain error in convicting Love of aggravated robbery. First, the trial court merged the robbery count with the aggravated robbery-count, and there was thus no prejudice in the finding of guilt for robbery. Second, the state presented evidence that Love had committed aggravated robbery purposely, a greater degree of culpability than the recklessness required for robbery by the holding in ColonI.[6] Moreover, the jury was not instructed that aggravated robbery was a strict-liability offense. Accordingly, any defects in the indictment were harmless, and we overrule the first assignment of error.
 Allied Offenses {¶ 14} In the second assignment of error, Love argues that he was improperly sentenced because a number of the charges involved allied offenses of similar import.
 {¶ 15} He first argues that he was improperly convicted of two counts of felonious assault. But as we have already stated, the trial court merged the two counts of felonious assault and therefore did not commit any error.
 {¶ 16} Love next argues that attempted murder and felonious assault were allied offenses.
 {¶ 17} In determining whether offenses are allied offenses of similar import under State v. Cabrales, [7] a court must first compare the elements of the offenses in *Page 5 
the abstract.[8] An exact alignment of the elements is not required for the offenses to be allied offenses of similar import.[9] Instead, if the offenses are so similar that the commission of one offense will necessarily result in the commission of the other, the offenses are allied offenses of similar import.[10]
 {¶ 18} To establish the offense of attempted murder, the state must prove that the defendant purposely or knowingly engaged in conduct that, if successful, would have resulted in the victim's death.[11] Love was convicted of felonious assault under R.C. 2903.11(A)(2), which provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 19} In State v. Lanier, [12] this court held that attempted murder and felonious assault under R.C. 2903.11(A)(2) were allied offenses of similar import.[13] In doing so, we stated that "[e]very time an individual commits an attempted murder and engages in conduct that, if successful, would result in the victim's death, that person is attempting to cause the victim physical harm."[14]
 {¶ 20} On further consideration, we conclude that the two offenses are not allied offenses of similar import under the Cabrales test. A person may attempt to cause another's death but not use a deadly weapon or dangerous ordnance, as required under R.C. 2903.11(A)(2). And a person may cause or attempt to cause physical harm to another with a deadly weapon although not attempting to cause the other's death. Thus, the elements of the offenses do not align so closely that the commission of one necessarily results in the commission of the other. Accordingly, we respectfully overrule Larder. *Page 6 
 {¶ 21} But our analysis does not end there. In State v.Brown, [15] the Supreme Court of Ohio expanded the test for determining whether offenses are allied offenses of similar import. UnderBrown, even if the offenses are not allied under the Cabrales test, the court must still examine whether the societal interests protected by the two statutes are the same or are distinct.[16] Where the General Assembly has manifested an intent to protect separate and distinct societal interests in enacting two statutes, a defendant may be punished for both offenses.[17]
 {¶ 22} Applying that standard, the Brown court held that the two subsections of the aggravated-assault statute, R.C. 2903.12, defined allied offenses of similar import because both advanced the same societial interest of preventing physical harm to persons.[18] And because the offenses had resulted from a single act undertaken with a single animus, the defendant had been improperly sentenced for both.[19]
 {¶ 23} But unlike Brown, the societal interests protected by the statutes in this case are distinct. The attempted-murder statute advances the societal interest of protecting human life, whereas the felonious-assault statute advances the interest of preventing physical harm to persons Accordingly, we hold that Love was properly sentenced for both crimes.
 {¶ 24} Love also argues that it was improper for the trial court to sentence him for both aggravated robbery and kidnapping. The aggravated-robbery statute, R.C. 2911.01(A)(1), states that "[n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and *Page 7 
either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2905.01(A)(2), the kidnapping statute, provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter."
 {¶ 25} The commission of a robbery necessarily entails the restraint of the victim's liberty for a sufficient amount of time to complete the robbery.[20] But where the restraint is prolonged, the confinement is secretive, or the movement is so substantial as to demonstrate a significance apart from the other offense, there exists a separate animus to support convictions for both offenses.[21]
 {¶ 26} In this case, the state demonstrated a separate animus for the kidnapping charge. There was evidence that Love and Heath had forced Morrison from his apartment and had attempted to put him in the trunk of a car. Though they were unsuccessful in that attempt, their asportation of Morisson was more than was required to accomplish the aggravated robbery, and it indicated a separate animus. Accordingly, Love was properly convicted of both offenses.
 {¶ 27} We overrule the third assignment of error.
 Jury Instructions {¶ 28} In the third assignment of error, Love argues that the trial court failed to give a complete jury instruction for kidnapping. He argues that, in addition to an instruction on the elements of the offense, a separate instruction was required to emphasize that, to constitute kidnapping as charged, the restraint of liberty had to have been done with the purpose of facilitating aggravated robbery. *Page 8 
 {¶ 29} A trial court must give the jury all instructions that are relevant and necessary for the jury to discharge its function as the factfinder.[22] But a jury instruction is not to be viewed in a vacuum; it must be evaluated in the context of the jury charge as a whole.[23] And in this case, because Love did not object to the jury instruction, we review the record for plain error.
 {¶ 30} We find no plain error in the instruction. The instruction given to the jury tracked the statutory elements for kidnapping, and it specifically required the jury to find that the victim had been restrained for the purpose of committing aggravated robbery. The trial court defined the term "purposely" and elsewhere in the charge defined the elements of aggravated robbery. The jury was thus fully apprised of the elements of kidnapping, and we overrule the third assignment of error.
 Motion for a New Trial {¶ 31} In his fourth assignment of error, Love argues that the trial court erred in overruling his motion for a new trial based on the improper conduct of the state and the state's witnesses.
 {¶ 32} Love first argues that the state permitted Morrison to testify, knowing that his testimony was false. Love specifically cites Morrison's misstatement about the clothing he had been wearing on the night of the offenses.
 {¶ 33} We find no merit in this argument. As the state aptly notes, Morrison's forgetfulness or uncertainty about what he had been wearing did not support a finding of perjury. Moreover, Love failed to demonstrate that the state was conscious of any alleged discrepancy or that the discrepancy affected the outcome of the trial. At the the hearing on the new-trial motion, defense counsel conceded that the matter was "really small in nature." We agree. *Page 9 
 {¶ 34} Love next argues that the state withheld or suppressed exculpatory material under Brady v. Maryland.[24] He first argues that the criminalist assigned to the case had failed to test certain items for deoxyribonucleic acid (DNA) evidence that might have exonerated him.
 {¶ 35} The argument is without merit. It was undisputed that the items in question belonged to Morrison, and the criminalist testified that there was no reason to test for anyone else's blood on the clothing. According to the criminalist, it was standard procedure to test items only to identify unknown persons. The state did not imply that Love's blood had been on the items, and there was no evidence from post-trial testing that the DNA results would have been exculpatory.
 {¶ 36} Finally, Love argues that the state's witnesses had manipulated or tampered with the evidence. Although it is unclear from his brief, he apparently bases this allegation on police investigators having photographed certain items at the police station rather than at the scene of the offenses.
 {¶ 37} Once again, this argument is without merit. The investigators photographed certain items at the station presumably so they could photograph them more clearly. But it was clear from the trial testimony, and from the photographs themselves, that the items had not been photographed where they had been found.
 {¶ 38} There was nothing to suggest that any of the officers' actions had been intended to deceive the jury or to deprive Love of a fair trial. Love has failed to demonstrate any misconduct, and we overrule the fourth assignment of error. *Page 10 
 Sufficiency and Weight of the Evidence {¶ 39} In the fifth and final assignment of error, Love argues that his convictions were based on insufficient evidence and were against the manifest weight of the evidence.
 {¶ 40} In the review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[25] To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[26]
 {¶ 41} In this case, the convictions were in accordance with the evidence. The state presented evidence that Love had shot Morrison in the abdomen and had then ransacked his apartment for the purpose of stealing property. The state thus adduced evidence as to each element of attempted murder, aggravated robbery, and aggravated burglary.[27]
 {¶ 42} Although Morrison believed that Love had fled before helping Heath force him into the trunk, the testimony of the neighbor indicated that Love had been an active participant in the abduction. At the very least, the evidence established that Love had been an accomplice in kidnapping Morrison.
 {¶ 43} And while Love denied any involvement in the offenses and attempted to establish a motive for Morrison to lie, we cannot say that the jury lost its way in *Page 11 
finding him guilty. Love was captured a short distance from the scene of the crimes, immediately after they had occurred, and gunshot residue was found on his hands. We overrule the fifth assignment of error.
 Conclusion {¶ 44} We affirm the judgments of the trial court.
Judgments affirmed.
CUNNINGHAM and DINKELACKER, JJ., concur.
[1] 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶ 38.
[2] 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169.
[3] Id. at ¶ 8.
[4] Id at ¶ 7.
[5] State v. Miller, 1st Dist. No. C-070691, 2008-Ohio-5899, ¶ 22.
[6] Colon I, supra, at ¶ 14.
[7] 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181.
[8] Id., paragraph one of the syllabus.
[9] Id.
[10] Id.
[11] See R.C. 2903.02(A) and 2923.02(A).
[12] 1st Dist. No. C-080162, 2008-Ohio-6906.
[13] Id. at ¶ 24.
[14] Id.
[15] 119 Ohio St.3d 447, 2008-Ohio-4569, 896 N.E.2d 149.
[16] Id. at ¶ 36.
[17] Id., citing State v. Mitchell, (1983), 6 Ohio St.3d 416, 419,453 N.E.2d 593.
[18] Brown, supra, at ¶ 39.
[19] Id. at ¶ 41.
[20] State v. Long (1979), 60 Ohio St.2d 126, 131,397 N.E.2d 1345.
[21] Id., syllabus. See, also, State v. Walker, 6th Dist. No. L-07-1156, 2008-Ohio-4614, ¶ 28.
[22] See, e.g., State v. Robinson, 1st Dist. No. C-060434,2007-Ohio-2388, ¶ 18.
[23] Id.
[24] (1963), 373 U.S. 83, 83 S.Ct. 1194.
[25] State v. Waddy (1992), 63 Ohio St.3d 424, 430,588 N.E.2d 819.
[26] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[27] See R.C. 2911.11(A)(2). *Page 1