The STATE of Ohio, Appellee,

v.

MORGAN, Appellant.

[Cite as *State v. Morgan,* 181 Ohio App.3d 747, 2009-Ohio-1370.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080011.

Decided March 27, 2009.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Philip R. Cummings, Assistant Prosecuting Attorney, for appellee.

Wendy R. Calaway, for appellant.

CUNNINGHAM, Judge.

{¶ 1} Kenneth Morgan forcibly entered a private residence to obtain "money and weed." After his capture, the Hamilton County Grand Jury returned a ten-count indictment against Morgan. He ultimately entered a plea of guilty to aggravated burglary, aggravated robbery, and kidnapping, each punishable as first-degree felonies. On appeal, Morgan asserts that his convictions must be reversed because the indictment failed to allege the requisite culpable mental state for each of the three offenses. But because Morgan waived these alleged errors in the indictment by entering his plea of guilty to the offenses, we affirm the trial court's judgment.

### Morgan's Multi–Count Indictment

{¶ 2} From the facts stated in the indictment, the bill of particulars, and the prosecutor's recitation of facts at the plea hearing, it is clear that late on the evening of January 9, 2007, Morgan and three accomplices, each armed and wearing ski masks and gloves, forcibly entered a private residence. Morgan was armed with an SKIS assault rifle. Two victims were inside the home. To move the victims upstairs, Morgan fired his weapon into the floor. He then stood guard while the other invaders forced the victims to open a safe. The four perpetrators fled with $1,700 in cash.

{¶ 3} A ten-count indictment charged Morgan and the others with aggravated burglary,[1] burglary,[2] aggravated robbery,[3] robbery,[4] kidnapping,[5] and accompanying firearm specifications. The indictment also alleged, in two counts, that Morgan had improperly discharged a firearm into a habitation [6] and had possessed a weapon while under a disability.[7]

{¶ 4} Count one of the indictment alleged a violation of R.C. 2911.11(A)(2), which proscribes aggravated burglary. The indictment alleged that Morgan, "by force, stealth, or deception, trespassed in an occupied structure * * * when another person other than an accomplice of [Morgan was] present, with purpose to commit in the structure * * * a criminal offense, and at the time, [Morgan] had a deadly weapon or dangerous ordnance on or about [his] person or under [his] control."

{¶ 5} In count five of the indictment, Morgan was charged with aggravated robbery as defined in R.C. 2911.01(A)(1). The indictment alleged that Morgan, "in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, to wit THEFT OF UNITED STATES CURRENCY BELONGING TO [a victim], or in fleeing immediately thereafter, had a deadly weapon on or about [his] person or under [his] control, and displayed, brandished, indicated possession or used the deadly weapon, to wit: A FIREARM."

{¶ 6} And count seven charged Morgan with kidnapping as defined in R.C. 2905.01(A)(2). The indictment stated that Morgan had "by force, threat, or deception, removed [a victim] from the place where she was found or restrained her of her liberty for the purpose of facilitating the commission of a felony, to wit: AGGRAVATED ROBBERY or flight thereafter."

{¶ 7} On September 28, 2007, Morgan entered a plea of guilty to these three counts of the indictment. In exchange for Morgan's guilty plea and his promise to testify against a co-defendant, the state had dismissed seven other felony counts plus another separate prosecution for cocaine trafficking. The parties recommended to the trial court an agreed nine-year term of imprisonment.

---

1. See R.C. 2911.11(A)(1) and 2911.11(A)(2).

2. See R.C. 2911.12(A)(2).

3. See R.C. 2911.01(A)(1).

4. See R.C. 2911.02(A)(2).

5. See R.C. 2905.01(A)(2).

6. See R.C. 2923.161(A).

7. See R.C. 2923.12(A)(3).

{¶ 8} The trial court caused the prosecutor to recite the facts surrounding the offenses. Pursuant to Crim.R. 11(C), it then conducted a thorough colloquy with Morgan to ensure that his plea had been made knowingly, intelligently, and voluntarily. The trial court accepted the pleas, found Morgan guilty, and imposed the agreed nine-year sentence of incarceration.

{¶ 9} Morgan's appointed appellate counsel reviewed the record on appeal and initially filed a no-error brief pursuant to *Anders v. California.*[8] On April 9, 2008, the Ohio Supreme Court released its decision in *State v. Colon ("Colon I")*, holding that "[w]hen an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment."[9]

{¶ 10} On July 23, 2008, with leave of this court, Morgan filed an amended brief claiming, in a single assignment of error, that the trial court lacked jurisdiction to enter a judgment of conviction because the indictment failed to charge the culpable mental state of recklessness for the offenses of aggravated burglary, aggravated robbery, and kidnapping. Relying on *Colon I*, he contends that his convictions must be reversed. Morgan does not contest the voluntariness of his plea. Rather, the gravamen of his argument is that the indictment failed to include essential elements of each offense, and therefore it was fatally defective, was void for lack of jurisdiction, and failed to charge criminal offenses.

### Defective Indictments Under Colon

{¶ 11} In *Colon I*, the defendant had been charged with robbery, in violation of R.C. 2911.02(A)(2). But the court found that "the indictment omitted a mens rea element for the actus reus element stated in subsection (2): 'Inflict, attempt to inflict, or threaten to inflict physical harm on another.'"[10] Because the robbery statute did not specify a degree of culpability for the act of attempting to inflict physical harm, and because the statute did not plainly indicate that strict liability is the mental standard, the catchall culpable mental state of recklessness applied.[11]

{¶ 12} Thus, the indictment was defective because it had failed to charge an essential element of the offense. The court concluded that an indictment that "failed to state the mens rea of recklessly for robbery resulted in structural

---

8. (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493.

9. 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, syllabus.

10. Id. at ¶ 10.

11. Id. at ¶ 14; see also R.C. 2901.21(B).

error." [12]   The court further held that the defendant had not waived the issue, even though he had failed to raise the defect in the trial court. [13]

{¶ 13} But upon reconsideration of its decision, the Supreme Court, in *State v. Colon* ("*Colon II*"), narrowed the broad sweep of *Colon I* and stated that its holding was confined to the "unique" facts of that case. [14]   The court clarified that a "structural-error analysis * * * is appropriate only in rare cases, such as *Colon I*, in which multiple errors at the trial follow the defective indictment." [15]   The court noted that "[s]eldom will a defective indictment have this effect, and therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim.R. 52(B) plain-error analysis." [16]   Thus "when a defendant fails to object to an indictment that is defective because the indictment did not include an essential element of the charged offense, a plain-error analysis is appropriate." [17]

■   {¶ 14} The court's decision to employ plain-error analysis is consistent with its long-established vindication of the waiver doctrine.   That is, errors not raised in the trial court in the first instance may not be considered on appeal. The failure to draw the trial court's attention to possible error, by objection or otherwise, when the error could have been corrected or avoided, results in a waiver of the issue for purposes of appeal. [18]   Thus, as in *Colon II*, when a defendant fails to preserve objections to a defective indictment during the course of a trial, the issues are forfeited and generally must be reviewed under " 'a claim of plain error under Crim.R. 52(B).' " [19]

{¶ 15} Morgan's appellate brief, filed in the immediate aftermath of the *Colon I* decision, urges us to find structural error in this case.   At oral argument, Morgan

---

**12.**   *State v. Dubose,* 1st Dist. No. C–070397, 2008-Ohio-4983, 2008 WL 4394715, ¶ 15.

**13.**   *Colon I,* syllabus.   But see *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 23 (describing the failure to preserve an objection as "forfeiture," not "waiver").

**14.**   119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, ¶ 6.

**15.**   Id. at ¶ 8;  see *Dubose* at ¶ 16 (listing the multiple trial errors flowing from the defective indictment in *Colon I*).

**16.**   *Colon II* at ¶ 8.

**17.**   Id. at ¶ 7.

**18.**   See *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 121, 679 N.E.2d 1099;  see also *In re Etter* (1998), 134 Ohio App.3d 484, 492, 731 N.E.2d 694;  *Pfeifer v. Jones & Laughlin Steel Corp.* (C.A.3, 1982), 678 F.2d 453, fn. 1.

**19.**   *Payne* at ¶ 23,  quoting *State v. McKee* (2001), 91 Ohio St.3d 292, 299, 744 N.E.2d 737, fn. 3 (Cook, J., dissenting);  see also *Colon II* at ¶ 7.

acknowledged the impact of the *Colon II* decision but still maintained that defects in his indictment had constituted reversible error.

{¶ 16} On appeal, Morgan first argues that the aggravated-robbery count of his indictment is fatally flawed pursuant to this court's decision in *State v. Lester*.[20] Like Morgan, Lester had been indicted for aggravated robbery in violation of R.C. 2911.01(A)(1). Unlike Morgan, Lester was convicted following a jury trial. Like the robbery indictment in *Colon I*, Lester's aggravated-robbery indictment lacked the culpable mental state of recklessness. Applying *Colon I*, we held that because the mens rea element had been omitted, Lester's conviction was also "plagued by structural error," and we reversed the conviction.[21] Morgan urges us to apply *State v. Lester* to reverse his aggravated-robbery conviction.

{¶ 17} The state counters that *State v. Lester* is in conflict with the Ohio Supreme Court's decision in *State v. Wharf*.[22] The state has appealed the *Lester* decision to the Supreme Court on this basis.[23] In *Wharf*, the court held that "it is not necessary to prove a specific mental state regarding the deadly weapon element of the offense of robbery" as charged in R.C. 2911.02(A)(1).[24] The robbery statute provided that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control." The Supreme Court in *Wharf* noted that, unlike the aggravated-robbery statute (at issue in *Lester* and here), "no use, display, or brandishing of a weapon, or intent to do any of the aforementioned acts, is necessary according to the plain language of the [robbery] statute. Had the legislature so intended, it certainly could have required a level of conduct more severe than it did in order to show a violation of the statute. Thus, by employing language making mere possession or control of a deadly weapon, as opposed to actual use or intent to use, a violation, it is clear to us that the General Assembly intended that R.C. 2911.02(A)(1) be a strict liability offense."[25]

{¶ 18} The state argues that there is no distinction, for mens rea purposes, between the acts of possessing or controlling a deadly weapon during a theft

**20.** 1st Dist. No. C–070383, 2008-Ohio-3570, 2008 WL 2781033, discretionary appeal allowed, 120 Ohio St.3d 1416, 2008-Ohio-6166, 897 N.E.2d 652.

**21.** Id. at ¶ 20–21, 23; accord *State v. Canyon*, 1st Dist. Nos. C–070729, C–070730, and C–070731, 2009-Ohio-1263, 2009 WL 724126, ¶ 11.

**22.** (1999) 86 Ohio St.3d 375, 378, 715 N.E.2d 172.

**23.** *State v. Lester*, 120 Ohio St.3d 1416, 2008-Ohio-6166, 897 N.E.2d 652.

**24.** *Wharf* at paragraph two of the syllabus.

**25.** Id. at 378, 715 N.E.2d 172.

offense and brandishing, displaying, or using a deadly weapon during a theft offense. Thus, it urges us to revisit *Lester* and to adopt the conclusion of other appellate courts that the *Colon* decisions are not applicable to a conviction for aggravated robbery under R.C. 2911.01(A)(1), because "[t]he Ohio Supreme Court has previously found that an (A)(1) aggravated robbery is a strict liability offense,"[26] and "because a violation of that provision requires no intent beyond that required for the theft offense."[27]

{¶ 19} Morgan argues that his indictment for aggravated burglary is also defective under *Colon* because it did not identify the applicable mens rea of the predicate offense of trespass. He also contends that the kidnapping count of the indictment is similarly flawed.

{¶ 20} The state responds that a *Colon* analysis is inapplicable to an indictment charging aggravated burglary.[28] The state asserts, moreover, that the aggravated-burglary count of the indictment was sufficient to give Morgan notice of all the elements of the offense when it specified that he had committed a trespass offense. And, the state insists, an indictment that tracks the language of the statute setting forth the charged offense does not have to separately set forth the elements of a predicate offense.[29] The state also argues that the kidnapping count of the indictment does not run afoul of *Colon* because the kidnapping statute "does set forth a mens rea: any of the purposes specifically set forth in the statute" and in this case, that purpose was clearly identified as facilitating the aggravated robbery of Morgan's victims.[30]

{¶ 21} The state ultimately urges this court to apply the plain-error analysis of *Colon II* and to find that Morgan was not prejudiced by whatever defects were found within the indictment.

### *Morgan's Guilty Plea Waived His Defective–Indictment Argument*

{¶ 22} But we need not resolve Morgan's assignment of error under a plain-error analysis. We hold that Morgan's guilty plea waived the alleged defects in the indictment, including a failure to allege a culpable mental state.

---

**26.** *State v. Smith*, 2nd Dist. Nos. 21463 and 22334, 2008-Ohio-6330, 2008 WL 5104685, ¶ 72.

**27.** *State v. Ferguson*, 10th Dist. No. 07AP–640, 2008-Ohio-3827, 2008 WL 2932005, ¶ 50; see also *State v. Peterson*, 8th Dist. No. 90263, 2008-Ohio-4239, 2008 WL 3870695.

**28.** See, e.g., *State v. Walker*, 6th Dist. No. L–07–1156, 2008-Ohio-4614, 2008 WL 4183337, ¶ 72.

**29.** See *State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162; see also *Dubose*, 2008-Ohio-4983, 2008 WL 4394715, ¶ 30–31.

**30.** *State v. Carver*, 2nd Dist. No. 21328, 2008-Ohio-4631, 2008 WL 4183982, ¶ 145.

■ {¶ 23} Unlike the defendant in the *Colon* cases, Morgan waived his right to a trial and entered pleas of guilty. "The plea of guilty is a complete admission of the defendant's guilt."[31]  In entering a guilty plea, a defendant "is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime."[32]

{¶ 24} This court has long held that "[t]he entry of a plea of guilty is a grave decision by an accused to dispense with a trial and allow the state to obtain a conviction without following the otherwise difficult process of proving his guilt beyond a reasonable doubt.  * * * Entering a plea of guilty is 'conclusive.  More is not required;  the court has nothing to do but give judgment and sentence.' "[33]

■ {¶ 25} Thus, when the defense or right asserted by a defendant relates solely to the capacity of the state to prove a defendant's factual guilt, it is subsumed by the defendant's guilty plea.  "Waiver is the intentional relinquishment or abandonment of a right, and waiver of a right 'cannot form the basis of any claimed error under Crim.R. 52(B).' "[34]  Therefore, a criminal defendant who pleads guilty is limited on appeal;  " '[h]e may only attack the voluntary, [knowing,] and intelligent character of the guilty plea' " and " 'may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' "[35]

{¶ 26} A guilty plea acts as a "break in the chain of events" preceding it in the criminal process.[36]  The Ohio Supreme Court has additionally held that a guilty plea breaks the chain between an alleged deprivation of important constitutionally guaranteed rights and a defendant's ability to vindicate those rights on appeal. A guilty plea waives, for example, the right to claim error arising from the denial of a motion to suppress a coerced confession,[37] improper jury selection and the

---

31.  Crim.R. 11(B)(1).

32.  *United States v. Broce* (1989), 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927.

33.  *State v. DeArmond* (1995), 108 Ohio App.3d 239, 242, 670 N.E.2d 531, quoting *Kercheval v. United States* (1927), 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009;  see also *State v. Bowen* (1977), 52 Ohio St.2d 27, 28, 6 O.O.3d 112, 368 N.E.2d 843, 844, citing *Kercheval* with approval.

34.  *Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, at ¶ 23, quoting *State v. McKee* (2001), 91 Ohio St.3d 292, 299, 744 N.E.2d 737, fn. 3 (Cook, J., dissenting).

35.  *State v. Spates* (1992), 64 Ohio St.3d 269, 272, 595 N.E.2d 351, quoting *Tollett v. Henderson* (1973), 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235;  see also *State v. Barton,* 108 Ohio St.3d 402, 2006-Ohio-1324, 844 N.E.2d 307, ¶ 73;  *State v. Fitzpatrick,* 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 78.

36.  *Tollett,* 411 U.S. at 267, 93 S.Ct. 1602, 36 L.Ed.2d 235.

37.  *State v. Ketterer,* 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 116.

denial of other pretrial motions,[38] and the deprivation of counsel at a preliminary hearing.[39]

{¶ 27} In *State v. Barton,* the Supreme Court held that a guilty plea waives the right to claim error arising from a defective indictment.[40] Barton alleged that the grand jury had failed to properly indict him for the offense of having a weapon while under a disability. He claimed that because the defective indictment had posed a jurisdictional defect, the matter could be raised at any time.[41] The Supreme Court rejected this argument and held that Barton's guilty plea waived his right to contest the defective indictment on appeal.[42]

{¶ 28} Finally, by entering a guilty plea and foregoing a trial, Morgan's allegedly defective indictment did not result in "multiple errors"[43] during a lengthy trial proceeding—the primary harm that both *Colon* decisions sought to remedy. We agree with the other Ohio appellate courts that have considered the issue that there is no indication that the Ohio Supreme Court, in either *Colon* decision, intended to abrogate the waiver doctrine with regard to guilty pleas.[44] In light of *State v. Barton* and the Supreme Court's admonition to employ the waiver doctrine in most defective-indictment cases like *Colon,* we hold that *Colon*-like defects to an indictment are subject to waiver or forfeiture.

### Waiver and State v. Shugars

{¶ 29} In 2006, in *State v. Shugars,* we vacated a judgment of conviction entered following a no-contest plea because the complaint had omitted a culpable mental state. We held that this defect had deprived the trial court of jurisdiction to try the defendant.[45] Although neither party raised the impact of *Shugars* on the resolution of this case, we feel compelled to address our own precedent.

---

**38.** See *Fitzpatrick* at ¶ 79; see also *Tollett,* 411 U.S. at 267, 93 S.Ct. 1602, 36 L.Ed.2d 235.

**39.** See *Spates,* paragraph two of the syllabus.

**40.** *Barton* at ¶ 73.

**41.** Id. at ¶ 69.

**42.** Id. at ¶ 73.

**43.** *Colon II,* 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, at ¶ 8; see *Dubose,* 2008-Ohio-4983, 2008 WL 4394715, at ¶ 16.

**44.** See *State v. Easter,* 2nd Dist. No. 22487, 2008-Ohio-6038, 2008 WL 4958607; *State v. McGinnis,* 3rd Dist. No. 15–08–07, 2008-Ohio-5825, 2008 WL 4831450, ¶ 26; *State v. Haney,* 4th Dist. No. 08CA1, 2009-Ohio-149, 2009 WL 104634, ¶ 18; *State v. Smith,* 6th Dist. No. L–7–1346, 2009-Ohio-48, 2009 WL 50119, ¶ 10; *State v. Hayden,* 8th Dist. No. 90474, 2008-Ohio-6279, 2008 WL 5084716, ¶ 6.

**45.** 165 Ohio App.3d 379, 2006-Ohio-718, 846 N.E.2d 592, ¶ 17.

{¶ 30} Shugars had entered a plea of no contest to violating Cincinnati's home-improvement ordinance, a second-degree misdemeanor.[46] We found that since the municipal code section did not mention a specific culpable mental state, the state was required to prove that Shugars had acted recklessly.[47] But the complaint had not identified any culpable mental state. We vacated the conviction and held that since "a valid complaint is a jurisdictional prerequisite to a conviction[,] * * * [a] defendant cannot waive the right to challenge a charging document that fails to state an essential element, even if the defendant pleads guilty to the charged offense."[48]

{¶ 31} The Eighth District Court of Appeals certified to the Ohio Supreme Court that our decision in *Shugars* was in conflict with its decision in *State v. Colon.*[49] Resolving that conflict in *Colon I*, the Supreme Court effectively affirmed *Shugars*, holding in the syllabus paragraph that Colon had not "waived the defect in the indictment."[50] But the Supreme Court's decision in *Colon II* to apply the waiver doctrine and plain-error analysis calls into question our holding in *Shugars* that "because the charging instrument did not [include a mens rea element], the trial court had no jurisdiction to try Shugars."[51]

{¶ 32} The Ohio Supreme Court's use of the waiver doctrine and plain-error analysis in its review of missing-culpable-mental-state defective-indictment cases is inimical to decisions claiming that defective-indictment errors are jurisdictional and are never waived. Moreover, the application of the waiver doctrine to *Colon*-like cases follows the trend in recent cases, decided after the advent of the rules of criminal procedure, holding that "defects in an indictment do not deprive a court of its power to adjudicate a case."[52]

{¶ 33} Accordingly, to the extent that we held in *Shugars* that a *Colon* defect in an indictment deprives a trial court of jurisdiction, *Shugars* is overruled. The

---

46. Id. at ¶ 2.

47. Id. at ¶ 10; see also R.C. 2901.21(B).

48. Id. at ¶ 15.

49. *Colon I*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, at ¶ 1.

50. Id. at syllabus.

51. *Shugars* at ¶ 17.

52. *United States v. Cotton* (2002), 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860; see also *Short v. United States* (C.A.6, 2006), 471 F.3d 686, 695; *Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162.

decision whether a no-contest plea also waives *Colon* errors, we leave to another day.

### *Conclusion*

{¶ 34} A guilty plea does not foreclose all means for seeking appellate or collateral review of the case and to obtain reversal of a conviction: a defendant may seek to withdraw his plea on the grounds that it was not made knowingly, intelligently, and voluntarily.[53] But we hold that Morgan's plea of guilty waived the alleged defects in the indictment, including a failure to allege a culpable mental state, because the record does not demonstrate that Morgan failed to understand that, by entering guilty pleas, he was admitting that he had committed aggravated burglary, aggravated robbery, and kidnapping. Accordingly, we overrule the assignment of error.

{¶ 35} The judgment of the trial court is affirmed.

Judgment affirmed.

SUNDERMANN, P.J., concurs.

PAINTER, J., dissents.

PAINTER, J., dissenting.

{¶ 36} I fail to understand how a defendant can plead guilty to an indictment that does not charge an offense and thereby magically convert the non-offense into an offense. Of course, the Ohio Supreme Court, having authored both *Colon I* and *Colon II*, is obviously even more confused than I am. Round and round and round it goes; where it stops nobody knows.

{¶ 37} Simply structuring the indictments properly would avoid this problem. But that seems to the state too easy an answer—or maybe too hard.

---

53. See Crim.R. 32.1; see also *State v. Kelley* (1991), 57 Ohio St.3d 127, 566 N.E.2d 658.