Jones, J.
 

 It is admitted that the franchise ordinance of April 25, 1908, contained the provisions herein set forth with respect to the paving and the local street car service by the respondent nnder the terms of the ordinance. It is also admitted that said ordinance contained the provisions in respect to the forfeiture of the franchise, as herein set forth. It is also admitted that the life of the improvement contemplated under the proceedings of the city council would extend beyond the term of the franchise, which expires on April 25, 1933.
 

 A great deal of evidence was taken by the parties, much of which is irrelevant in view of the conclusions arrived at by this court. So far as the relevant facts pertain to the issue made by the respondent, they are substantially as follows: The respondent was incorporated and was an interurban electric railway company, operating in the state over a line extending from Columbus to Lima, through Bellefontaine. On January 25, 1921, in a proceeding for foreclosure instituted in the federal District Court of Northern Ohio, the traction company was, by a decree of that court, placed in the hands of a receiver, who, under its decree, took possession of the traction company’s property with full power to operate it; and said property has been ever since and now is under the control of and is being operated by said receiver. By that
 
 *540
 
 decree the respondent was restrained from interfering, in any way whatsoever, with the possession or management of the property under the receiver’s control. While the Attorney General objected to the testimony relating to the action of the federal court appointing a receiver, and his subsequent operation of the traction company, this court is of the opinion that such testimony was relevant and admissible. The main legal question presented by the answer is: May the Attorney General oust the defendant from its corporate rights and declare a forfeiture of its charter and franchise under the facts thus presented and proven?
 

 It may not be amiss to detail some of the pertinent facts giving rise to this controversy. As heretofore stated, the provisions contained in the franchise ordinance are admitted. The prior jurisdiction of the federal court, together with its decree taking control of the traction property, and authorizing its operation, are proven. While the Attorney General alleges that respondent discontinued the operation of the city car, and denies that its discontinuance was caused by the receiver, it develops from the testimony that in its decree of May 4, 1926, the federal court instructed its receiver to immediately discontinue the operation of such local car service, “as such operation is unprofitable and constitutes a burden which should not be further continued by the receiver.” Some question is made by counsel for respondent that the proceedings of the city council, beginning November 9, 1925, requiring brick paving, etc., were, not authorized by the original franchise ordinance. However, that question, or the construction
 
 *541
 
 of the franchise ordinance in respect to the character of paving, is unimportant for the following reason:' In the fall of 1925 and the spring of 1926, when the city improvement proceedings were pending, differences arose between the city officials and the federal court as to the character and expense of the paving improvement. It is in evidence that the improvement by brick paving would entail a cost to the traction company of from $24,000 to $25,000, and that paving with concrete would be some $1,500 to $2,000 less; the federal judge, because of this expense, and because of the short life of the franchise compared with the much longer life of the improvement, was only willing to improve with less costly material, viz., a tarvia surface, which the engineer employed by the receiver estimated would cost “between $6,000 and $7,000.” While these differences relating to paving were pending, numerous conferences were held between the city officials and the receiver. In response to a request for advice, the judge of the United States District Court, referring to the fact that the expense of permanent paving was not justified because of the brief life of the franchise, announced to the receiver that “the court will not authorize the issuing of receivership certificates for this purpose.” The federal court confirmed this attitude in its decree of May 4, 1926. However, it authorized its receiver to submit propositions to the city council of Bellefontaine for a new franchise acceptable to the federal court.
 

 Whether this action in
 
 quo warranto
 
 would ordinarily lie where prior jurisdiction of a federal court had not intervened by taking over the pos
 
 *542
 
 session, control, and operation of the traction utility is not before this court. The relator bases his right to the relief sought here upon the authority of
 
 State ex rel. Attorney General
 
 v.
 
 Columbus, Delaware & Marion Electric Co.,
 
 104 Ohio St., 120, 135 N. E., 297. But that case, and the principles there announced, do not apply, for it nowhere appears that any judgment of ouster would affect the prior jurisdiction acquired by a federal court. Nor, for a similar reason, is the case of
 
 Ohio ex rel. Attorney General
 
 v.
 
 Pennsylvania & Ohio Canal Co.,
 
 23 Ohio St., 121, germane. In neither case were the jurisdiction and orders of a federal court drawn into question, as in this instance.
 

 It is disclosed by the record that the federal judge will not issue receiver’s certificates for the payment of the paving expense under the city’s plans, for the reason that such expense would be too large an outlay in view of the short life of the company’s local franchise. Manifestly, since the court would not issue such certificates, the collection of the paving expense by the city could only be made by some legal process against the respondent’s
 
 corpus
 
 now
 
 in custodia legis
 
 of the federal court. That court had also ordered the receiver to discontinue the local car service, required to be given under the franchise, for the reason that its operation proved unprofitable and constituted a burden upon the corporation. It is impossible to escape the conclusion that the enforcement of the city’s claim by ¡means of this suit would be a direct interference with the custody of the property in the hands of the federal court, and would contravene its orders,
 
 *543
 
 should any writ in
 
 quo warranto
 
 issue and be enforced under our
 
 quo warranto
 
 statutes.
 

 Counsel for the relator contend that the jurisdiction of the federal court is not exclusive since that court has no power to revoke the charter and franchises of the corporation granted by the state; that a suit for such purpose will lie only in the state court; and that a judgment of ouster ought to issue notwithstanding the previous appointment of the receiver by the federal court. In this connection many cases are cited in support of such contention, special reliance being placed upon the decision of an inferior court of the state of New York, viz.,
 
 People
 
 v.
 
 New York City Ry. Co.,
 
 57 Misc. Rep., 114, 107 N. Y. S., 247, and upon authorities therein cited. If this court should simply make a decree for the dissolution of the corporation and fail to disturb its assets, it might be true that such a decree would not interfere with the prior jurisdiction of the federal court. But our
 
 quo warranto
 
 statutes require the administration of the property by trustees in case of ouster and dissolution, and such incidental procedure would directly interfere with the custody of the federal court. And should we appoint a receiver, as prayed for, a conflict would presently arise over the possession of the traction property.
 

 However, since the jurisdiction of the federal court has been drawn in question it may be well to ascertain the decision of our highest federal court upon the subject under consideration. The case of
 
 Wabash Rd. Co.
 
 v.
 
 Adelbert College,
 
 208 U.
 
 S.,
 
 38, 28 S. Ct., 182, 52 L. Ed., 379, reversing a decision of this court, was reported after the
 
 *544
 

 New York Railway case, supra,
 
 was decided. A federal court had obtained jurisdiction of railroad property under foreclosure proceedings; thereafter some holders of equipment bonds brought their action in the state court for the purpose of enforcing their lien. In the course of the opinion, Mr. Justice Moody, reviewing the procedure, and upholding the prior jurisdiction of the federal court, said, at page 54, 28 S. Ct., 187:
 

 “When a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The latter courts, though of concurrent jurisdiction, are without power to render any judgment which invades or disturbs the possession of the property while it is in the custody of the court which has seized it. For the purpose of avoiding injustice which otherwise might result, a court during the continuance of its possession has, as incident thereto and as ancillary to the suit in which the possession was acquired, jurisdiction to hear and determine all questions respecting the title, the possession or the control of the property. * * * Those principles are of general application and not peculiar to the relations of the courts of the United States to the courts of the states; they are, however, of especial importance with respect to the relations of those courts, which exercise independent jurisdiction in the same territory, often over the same property, persons, and controversies; they are not based upon any supposed superiority of one court over the others, but serve to prevent a conflict over the possession
 
 *545
 
 of property, which would be unseemly, and subversive of justice; and have been applied by this court in many cases, some of which are cited, sometimes in favor of the jurisdiction of the courts of the states and sometimes in favor of the jurisdiction of the courts of the United States.” Citing cases.
 

 Conversely, it was held by the Supreme Court of the United States that the administration by a state court of the estate in its receiver’s hands could not be interfered with by a court of the United States.
 
 Porter
 
 v.
 
 Sabin,
 
 149 U. S., 473, 13 S. Ct., 1008, 37 L. Ed., 815.
 

 The principle announced by the United States Supreme Court was followed by this court in
 
 Board of County Commissioners
 
 v.
 
 Public Utilities Comm.,
 
 107 Ohio St., 442, 140 N. E., 87, 30 A. L. R., 429, wherein the syllabus reads:
 

 “Where an interstate system of interurban railroads is in the custody of a receiver appointed by a federal court in proceedings to foreclose a mortgage, and that court grants an application to abandon a branch line of such system, which branch is wholly within this state, on the ground that it is operated at a loss, such order of the federal court concerning property in its custody may not be disturbed by the state commission or the state courts.”
 

 A case very similar to this arose before the federal Circuit Court of Appeals in
 
 Havner, Atty. Gen.,
 
 v.
 
 Hegnes,
 
 269 F., 537, decided about 13 years later than the decision in the
 
 New York Railway case, supra.
 
 There, a citizen of South Dakota had brought an action in the United States District
 
 *546
 
 Court for Northern Iowa, against a corporation organized under the laws of that state, asking for equitable relief and for the appointment of a receiver to take charge of the assets of the corporation. On April 26, 1920, the federal judge issued an order requiring the defendant to show cause why a receiver should not be appointed, as prayed for. Before the time for hearing the application for the appointment of a receiver had expired the Attorney General of Iowa commenced an action in the state court seeking to dissolve the corporation, and a receiver was appointed by the state court. A few days later the federal court made an order enjoining further proceedings in the state court, and ordered the receiver of that court to turn over the property and assets of the defendant to the receiver appointed by the federal court. Appeal was taken to the federal circuit court and the case heard before Judges Sanborn, Carland, and Hunger. Alluding to the contention that is made by counsel for the relator in this case, viz., that the issues and subject-matter involved in the two courts are not the same and that therefore there can be no infringement of jurisdiction between them, Judge Carland quotes with approval the following rule:
 

 “The court which first acquires the lawful jurisdiction of specific property by the seizure thereof or by the due commencement of a suit, from which it appears that it is or will become necessary to a determination of the controversy involved or to the enforcement of its judgment or decree therein for the court to seize, to charge with a lien, to sell, or to exercise other like dominion over it, thereby
 
 *547
 
 withdraws that property from the jurisdiction of every other court so far as necessary to accomplish the purpose of the suit, and entitles that court to retain control of it requisite to effectuate its final judgment or decree therein free from the interference of every other tribunal. ’ ’
 

 The federal court, although holding there might be no conflict of jurisdiction as to the causes' of action, held there wa.s a conflict relating to the
 
 res,
 
 and that the court first acquiring actual and constructive possession of the property and assets of the corporation had the right to-retain the same to the exclusion of all other courts. The injunction allowed by the lower court against the receiver of the state court, respecting the possession of the property, was allowed to stand.
 

 Some question is ¡made by counsel for the relator, although not presented by the pleadings, to the effect that no meeting of the stockholders of the corporation had been had since the appointment of this receiver, and that the corporation, if it functions at all, does so simply by means of directors who continue to hold over. We do not attach much importance to this claim, since it is very evident that with the property in the hands of the federal court, but very little active duty would devolve upon the stockholders and directors while this situation remains. However, the gravamen of this action, under the pleadings presented, is based solely upon the forfeiture of the Bellefontaine franchise because of noncompliance with its provisions with respect to paving and street car service. This noncompliance, however, was not caused by the corporation while it was operating
 
 *548
 
 the railway. So far as this record discloses the corporation complied with the terms of its franchise until its property was taken from it by the federal court. If any reason for forfeiture exists it was caused, not by the act of the corporation, which is souglit to be ousted from its franchise, but solely by the act of the federal court, which had assumed jurisdiction of its property and changed its method of operation in the city of Bellefontaine. If we assume that this court has jurisdiction to oust the respondent as prayed for by the Attorney General, certainly it would not make such order in view of the evident fact that the real complaint is directed against the acts of the federal court rather than those of the corporation.
 

 The writ is denied.
 

 Writ denied.
 

 Marshall, C. J., Day, Kinkade, Robinson and Matthias, JJ., concur.