[Cite as *State v. Lane*, 2010-Ohio-4819.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,                                          CASE NO. 1-10-10

    PLAINTIFF-APPELLEE,

  v.

EARNEST LANE,                                          O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR00 04 0159

Judgment Affirmed

Date of Decision:  October 4, 2010

APPEARANCES:

    *Kenneth J. Rexford,* for Appellant

    *Jana E. Emerick,* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Earnest Lane (hereinafter "Lane"), appeals the Allen County Court of Common Pleas' December 28, 2010 judgment entry of re-sentencing. For the reasons that follow, we affirm.

{¶2} This appeal stems from the events that took place on March 29, 2000, when allegedly Lane and nine other individuals planned an armed robbery and firebombing of a house on Leland Avenue in Lima, Ohio, for the purpose of stealing a large amount of cocaine. As a result of the firebombing, five persons living in the Leland Avenue residence died, including four children.

{¶3} Lane, and the nine other co-defendants, were indicted on April 19, 2000. Lane was indicted as follows: one count of complicity to aggravated arson in violation of R.C. 2909.02(A)(1), a felony of the first degree; one count of complicity to aggravated robbery in violation of R.C. 2911.01(A)(1), with a firearm specification pursuant to R.C. 2941.141(A), a felony of the first degree; and five counts of complicity to aggravated murder in violation of R.C. 2903.01(B). On May 2, 2000, Lane was arraigned and entered pleas of not guilty on all counts in the indictment, and attorney Jerome Doute was appointed to represent him.

{¶4} On August 4, 2000, Lane entered a negotiated plea of guilty to the charges of complicity to aggravated arson and complicity to aggravated robbery,

without the firearm specification, and also entered guilty pleas to five counts of complicity to involuntary manslaughter (having been reduced from the original charges of complicity to aggravated murder). Pursuant to the negotiated plea, the State dismissed an unrelated felony drug case that had been pending against Lane.

{¶5} On November 16, 2000, Lane filed a motion to withdraw his guilty plea on the basis that his attorney had misinformed him as to how many years in prison Lane would have to serve. On December 29, 2000, Lane's attorney, Doute, filed a motion to withdraw as Lane's counsel, and a hearing on that matter was held on January 11, 2001. Subsequently, the trial court granted Doute's motion to withdraw, and appointed Lane another attorney, Gregory Donohue.

{¶6} On February 22, 2001, a hearing was held on Lane's motion to withdraw his guilty plea, and, following the presentation of evidence, the trial court overruled the motion. Subsequently, on March 27, 2001, a sentencing hearing was held in the case. Lane was sentenced to nine (9) years imprisonment on the aggravated arson conviction, ten (10) years imprisonment on the aggravated robbery conviction, and nine (9) years imprisonment on each of the involuntary manslaughter convictions. The first nine (9) year term was ordered to be served concurrently with the other five nine (9) year terms, but consecutive to the ten (10) year term, for a total of nineteen (19) years imprisonment.

{¶7} Thereafter, Lane filed a direct appeal challenging the trial court's denial of his motion to withdraw his guilty plea and argued that he had been denied effective assistance of counsel. This Court overruled Lane's assignments of error and affirmed the judgment of conviction and sentence. *State v. Lane*, 3d Dist. No. 1-01-69, 2001-Ohio-2299.

{¶8} Then, eight years later, on December 2, 2009, Lane filed a motion seeking a new sentencing hearing on the basis that the trial court had failed to properly advise him of post-release control at the original sentencing. On December 23, 2009, a second sentencing hearing was held, after which time the trial court ordered Lane to serve the same sentence to which Lane had originally been sentenced, and the trial court provided to Lane the correct information pertaining to post-release control.

{¶9} Lane now appeals and raises seven assignments of error for our review. For ease of our discussion, we elect to address Lane's first and second assignments of error together.

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT VIOLATED CRIMINAL RULE 11 IN ACCEPTING THIS PLEA.**

## ASSIGNMENT OF ERROR NO. II

**THE PLEA BY MR. LANE WAS NOT KNOWING, VOLUNTARY, AND INTELLIGENT BECAUSE THE TRIAL COURT DECLINED TO ADVISE MR. LANE THAT THE**

**SENTENCE WOULD INCLUDE *MANDATORY* POST-RELEASE CONTROL AND OTHERWISE ERRED IN THE ADVICE.**

{¶10} In his first assignment of error, Lane argues that his guilty plea was invalid and that it should be set aside. Specifically, Lane argues that his plea was not knowing, voluntary, and intelligent because the trial court failed to inform him that his post-release control was mandatory and that he would be subject to additional sanctions for felony violations while on post-release control. With respect to his second assignment of error, Lane alleges the same particular error but claims that it raises an issue of *constitutional* law.

{¶11} First, Lane argues that the trial court should not have accepted his plea because he did not actually enter the guilty plea himself; rather, his defense counsel tendered the plea on his behalf. However, despite Lane's assertions, this Court has stated that "Crim.R. 11 does not require that the defendant himself must orally give his plea to the trial court, thereby not prohibiting the defendant's counsel from orally entering the plea, as long as the remainder of Crim.R. 11 is complied with." *State v. Nathan* (1995), 99 Ohio App.3d 722, 725-26, 651 N.E.2d 1044. See, also, *State v. Harvey*, 3d Dist. No. 1-09-47, 2010-Ohio-1628, ¶7. "When an accused is present in the court; when the record shows clearly that he knew and understood what was being done; and when it is clear that he acquiesced in a guilty plea entered for him by his attorney; then the plea has the exact same

force and effect as though he had personally spoken the words of the attorney." *Harvey*, 2010-Ohio-1628, at ¶7, citing *State v. Keaton* (Jan. 14, 2000), 2nd Dist. No. 98 CA 99, at *5, citing *U.S. v. Denniston* (C.A.2, 1937), 89 F.2d 696, 698. Therefore, we reject Lane's argument that his plea was invalid because his attorney entered it for him, especially in light of our finding below that the record demonstrates that Lane knew and understood what was being done.

**{¶12}** Next, Lane argues that by failing to inform him at the change of plea hearing that his sentence would include a mandatory period of post-release control, and by failing to inform him that if he committed a felony while on post-release control he could be sent back to prison, the trial court failed to inform him of the potential penalties involved. In support of his argument that his plea was not knowing, voluntary, and intelligent because the trial court failed to clearly state that his post-release control was mandatory Lane points to the Ohio Supreme Court's decision in *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224.

**{¶13}** Crim.R. 11 governs the process of entering a plea and requires that the trial court personally address a defendant to determine if the plea is voluntary, and that the defendant understands both the plea itself as well as the rights waived by pleading guilty. Crim.R. 11(C)(2). Specifically, Crim.R. 11(C) states that a trial court cannot accept a guilty plea without first advising the defendant of the

consequences of the plea, including the maximum penalty for the offense or offenses at issue. Post-release control is considered part of an offender's sentence, and because Lane intended to plead guilty to a number of first-degree felonies, the trial court was statutorily required to inform him that he would be subject to a mandatory period of five years post-release control if he were ever released from prison. See R.C. 2967.28(B)(1); *Sarkozy*, 2008-Ohio-509, paragraph two of the syllabus.

{¶14} In *State v. Sarkozy*, the Ohio Supreme Court held that "[i]f the trial court fails during the plea colloquy to advise a defendant that the sentence will include a mandatory term of postrelease control, the court fails to comply with Crim.R. 11, and the reviewing court must vacate the plea and remand the cause." 2008-Ohio-509, at ¶25. Crim.R. 11(C) relates both to constitutional and nonconstitutional rights, and it is the nature of the right affected from the trial court's alleged error involving a Crim.R. 11(C) violation that determines the standard to be applied, which will then determine whether the violation invalidates the plea. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶¶13-21. Despite Lane's arguments to the contrary, the right to be informed at the time of plea of the maximum sentence that could be imposed upon conviction is a *nonconstitutional* right under Crim.R. 11 analysis. *State v. Fleming*, 6th Dist. No. OT-07-024, 2008-Ohio-3844, ¶10. As such, where a nonconstitutional right is

involved, this Court looks at whether the trial court substantially complied with the requirements of Crim.R. 11 and will not reverse unless prejudice occurred. *Veney*, 2008-Ohio-5200, at ¶¶14-17; *Sarkozy*, 2008-Ohio-509, at ¶¶19-23; *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶12. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Moore*, 3d Dist. Nos. 6-07-03, 6-07-04, 2007-Ohio-6018, ¶12. See, also, *Sarkozy*, 2008-Ohio-509, at ¶20, quoting *Griggs*, 2004-Ohio-4415, at ¶12. "'The test for prejudice is 'whether the plea would have otherwise been made.'" *Sarkozy*, quoting *Griggs*, 2004-Ohio-4415, at ¶12. While we find that the trial court did misinform Lane concerning his post-release control at the time of his plea hearing, after reviewing the record, we believe that the trial court substantially complied with Crim.R. 11, and that Lane understood the consequences of pleading guilty, including the maximum amount of penalty he faced.

{¶15} First of all, we disagree with Lane's assertions that the trial court was required to inform him at the change of plea hearing of the possibility that it could impose a prison term for committing a new felony while on mandatory post-release control. Because this is a matter within the trial court's discretion there is only the potential for the imposition of that penalty. As such, a trial court is not

required to inform a defendant of this possibility at the time of a guilty plea in order to substantially comply with Crim.R. 11(C)(2)(a). *State v. Lamb*, 156 Ohio App.3d 128, 2004-Ohio-474, 804 N.E.2d 1027, ¶17. See, also, *State v. Susany*, 7th Dist. No. 07 MA 7, 2008-Ohio-1543, ¶95 (finding that there is no authority that states a defendant must be advised that upon the commission of a new offense, a defendant is subject to additional prison time for any felony committed while on postrelease control; failing to so advise a defendant will still result in substantial compliance with Crim.R. 11(C)(2)(a)); *State v. Mullins*, 12th Dist. No. CA2007-01-028, 2008-Ohio-1995, ¶¶12-13 (finding no error in the trial court's failure, at appellant's original sentencing hearing, to inform him of the potential sentence for committing a new felony while on postrelease control); *State v. Witherspoon*, 8th Dist. No. 90498, 2008-Ohio-4092, ¶¶ 17-19 fn. 11. (stating that "although defendants were not apprised of all the ramifications of their postrelease control, as long as they were advised that their liberty could continue to be restrained after sentencing, this provided adequate notice").

{¶16} Second, the trial court did advise Lane that he would be subject to post-release control once he was released from any prison term that it might impose; moreover, the trial court explained that Lane could go back to prison for up to one-half of his sentence if he violated post-release control. (State's Ex. AA, Aug. 4, 2000 Tr. at 7). While the trial court incorrectly informed Lane that he

- 9 -

would be subject to post-release control for a period of "up to five (5) years," instead of the statutorily mandated five-year term of post-release control, the written plea agreement accurately stated that Lane would serve a five-year term of post-release control. Moreover, at the change of plea hearing, Lane stated that he understood the terms of the negotiated plea agreement, and that he had no questions of his attorney, and that he did not need the trial court to explain to him anything regarding the plea agreement. Thus, Lane had notice that he would receive a term of five years of post-release control, and that if he violated the terms of his post-release control, he could serve up to one-half of his original prison sentence. Under these circumstances, we hold that the trial court substantially complied with Crim.R. 11(C)(2)(a). *State v. Alfarano*, 1st Dist. No. C-061030, 2008-Ohio-3476, ¶6, citing *State v. Moviel*, 8th Dist. No. 86244, 2006-Ohio-697, ¶¶17-23, overruled on other grounds in *In re Ohio Criminal Sentencing Statutes Cases*, 110 Ohio St.3d 156, 2006-Ohio-4086, 852 N.E.2d 156. See, also, *State v. Shaffer*, 11th Dist. No. 2009-L-054, 2010-Ohio-1276, ¶31; *State v. Hunter*, 1st Dist. No. C-080730, 2009-Ohio-3259, ¶21 fn. 22; *State v. Smiley*, 5th Dist. No. 2008 CA 00192, 2009-Ohio-3269, ¶29; *State v. Fleming*, 6th Dist. No. 0T-07-024, 2008-Ohio-3844. Additionally, we note that Lane has not alleged that he would not have entered a guilty plea to the charge had he again been advised that his post-release control was a mandatory five years. In fact, the evidence in the record

indicates that it was the length of the imprisonment, not the length of the post-release control, which Lane alleged was critical to the plea agreement. Thus, Lane has not demonstrated any prejudice resulting from the misinformation about post-release control.

{¶17} Furthermore, even though Lane relies on the Supreme Court's ruling in *Sarkozy*, we find *Sarkozy* distinguishable from the facts of this case. In *Sarkozy*, the Ohio Supreme Court disagreed with the court of appeals' finding that there had been substantial compliance because essentially there had been *no* compliance with Crim.R. 11. "The trial court did not merely misinform Sarkozy about the length of his term of postrelease control. Nor did the court merely misinform him as to whether postrelease control was mandatory or discretionary. Rather, the court failed to mention postrelease control *at all* during the plea colloquy. Because the trial court failed, before it accepted the guilty plea, to inform the defendant of the mandatory term of postrelease control, which was part of the maximum penalty, the court did not meet the requirements of Crim.R. 11(C)(2)(a)." *Sarkozy*, 2008-Ohio-509, at ¶22. Thus, we find *Sarkozy* distinguishable, because unlike where a trial court completely failed to mention post-release control during the plea colloquy, here the trial court just failed to inform Lane about whether the five year term was mandatory or discretionary.

{¶18} Lane's first and second assignments of error are, therefore, overruled.

## ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE DEFENSE MOTION TO WITHDRAW HIS PLEA.**

{¶19} In his third assignment of error, Lane argues that the trial court erred in overruling his motion to withdraw his guilty plea.

{¶20} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *State v. Engle* (1996), 74 Ohio St.3d 525, 527, 660 N.E.2d 450; *State v. Horch*, 154 Ohio App.3d 537, 2003-Ohio-5135, 797 N.E.2d 1051, ¶3 (citations omitted); *State v. Bush*, 3d Dist. No. 14-2000-44, 2002-Ohio-6146, ¶10 (citations omitted). Furthermore, Crim.R. 32.1 governs motions to withdraw guilty pleas, and provides, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." While Crim.R. 32.1 provides a standard by which post-sentence withdrawals of guilty pleas may be evaluated, i.e. the "manifest injustice" standard, the Ohio Supreme Court has determined that a pre-sentence motion to withdraw a guilty plea should be "freely allowed and treated with liberality." *Xie*, 62 Ohio St.3d at 521-26, paragraph one

of the syllabus; *State v. Fulk*, 3d Dist. No. 15-04-17, 2005-Ohio-2506. Nevertheless, "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." *State v. Xie* (1992), 62 Ohio St.3d at 521, paragraph one of the syllabus.

{¶21} In considering a presentence motion to withdraw a guilty plea, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for allowing the defendant to withdraw his plea. Id. Some of the factors that are weighed in considering the trial court's decision on a presentence motion to withdraw a plea are as follows: (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Griffin* (2001), 141 Ohio App.3d 551, 554, 752 N.E.2d 310.

{¶22} Ultimately, it is within the sound discretion of the trial court to determine what circumstances justify granting a presentence motion to withdraw a guilty plea. Id., at paragraph two of the syllabus. As a result, appellate review of

the trial court's denial of a motion to withdraw a guilty plea is limited to whether the trial court abused its discretion. *State v. Nathan* (1995), 99 Ohio App.3d 722, 725, 651 N.E.2d 1044, citing *State v. Smith* (1977), 49 Ohio St.2d 261, 361 N.E.2d 1324. An abuse of discretion connotes more than an error of judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying an abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id. After reviewing the record, we believe that the trial court did not abuse its discretion in denying Lane's motion to withdraw his guilty plea.

{¶23} In particular, Lane argues that under *Sarkozy* when a trial court fails during the plea colloquy to advise a defendant that the sentence will include a mandatory term of postrelease control, a defendant has a right to withdraw his guilty plea, and this motion to withdraw a guilty plea must be considered as a presentenced motion under Crim.R. 32.1. However, we note that Lane's original motion to withdraw his guilty plea was filed and ruled upon prior to his first sentencing hearing, and that Lane never filed another motion to withdraw his guilty plea even after he had filed a motion for re-sentencing in 2009.

{¶24} Lane entered into his plea on August 4, 2000, and on November 16, 2000 Lane filed a motion to withdraw his guilty plea. Although the trial court

originally sentenced Lane on March 27, 2001, prior to sentencing, the trial court held a hearing on Lane's motion to withdraw on February 22, 2001. Subsequently, following the presentation of the evidence, the trial court denied Lane's motion to withdraw his guilty plea, and as we already stated, contrary to Lane's assertions, there was never another motion to withdraw his guilty plea filed before or after he was sentenced in 2009. Thus, Lane's motion to withdraw *was* treated as a presentence motion, and as such, it was liberally construed.

{¶25} Despite this liberality, the trial court still denied Lane's motion to withdraw his guilty plea. After the presentation of evidence, reviewing the change of plea hearing of August 4, 2000, and the applicable statutes and law, the trial court methodically went through and considered each of the nine factors. (Feb. 22, 2001 Tr. at 26). Specifically, the trial court stated that with respect to any prejudice to the State, the State had nolled other pending charges as part of the negotiated plea agreement, and Lane had provided a sworn statement to the State indicating his involvement. (Id. at 26-27). Moreover, the trial court reviewed the Crim.R. 11 hearing transcript and found that it had fully advised Lane of his rights, that his counsel had been highly competent, and that Lane had acknowledged at the Crim.R. 11 hearing that he had been satisfied with his counsel. (Id. at 27-28). The trial court noted that Lane had been specifically asked at the change of plea hearing if he had any question or if there was anything

he did not understand, and Lane replied "no." (Id. at 27-28). While the trial court found that Lane had made his motion to withdraw within a reasonable amount of time (approximately three months later), and although Lane claimed that he had been told by his attorney that he would only receive seven years imprisonment, the trial court found that the record demonstrated otherwise. (Id. 29-30). In particular, the trial court highlighted the portion of the change of plea hearing in which it had specifically asked Lane whether he understood that all of the offenses he was pleading to were first degree felonies, that the State was recommending a total of twenty (20) years, and that the trial court was not bound to follow the State's recommendation. (Id. at 29-30). Furthermore, the trial court found that Lane had made his plea knowingly, voluntarily, and intelligently – that he had understood the conditions and the possible sentences and the discretion the court had in its sentencing. (Id.). Finally, the trial court found that there was nothing in the record that illustrated that Lane was perhaps not guilty or had a defense to the charges, and in fact, Lane had made a statement under oath which clearly indicated his involvement in the criminal activity. (Id. at 30-31).

{¶26} Based upon the record before this Court, we find that the trial court granted a full hearing and gave a great deal of consideration to Lane's motion. Given the evidence and the trial court's extensive analysis, we cannot find that the

trial court abused its discretion in denying Lane's motion to withdraw his guilty plea.

{¶27} Lane's third assignment of error is, therefore, overruled.

**ASSIGNMENT OF ERROR NO. IV**

**THE SENTENCE IMPOSED IN THIS CASE WAS IMPOSED BY APPLICATION OF LAW THAT IS AND WAS UNCONSTITUTIONAL, IN VIOLATION OF MANY RIGHTS UNDER THE UNITED STATES CONSTITUTION.**

{¶28} In his fourth assignment of error, Lane argues that his sentence was "imposed by application of law that is and was unconstitutional, in violation of many rights under the United States Constitution." In particular, Lane cites to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, and claims that when he had been sentenced originally, the effect of the *Foster* ruling had been inapplicable, but now because his original sentence was void, when he was resentenced on December 23, 2009, *Foster*'s ruling should have been applied.

{¶29} In *State v. Foster*, the Ohio Supreme Court declared unconstitutional those portions of the felony sentencing statutes that required judicial fact-finding before the trial court could impose a prison sentence. 2006-Ohio-856, at ¶100. Subsequently, the Supreme Court excised those provisions that related to judicial fact-finding from the sentencing statutes, specifically including R.C. 2929.14(E)(4) and R.C. 2929.41(A). Id. at ¶97. As a result of the excision of those unconstitutional provisions, the Court ultimately held that, "[t]rial courts

have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus.

{¶30} However, a trial court must still consider the overall purposes of sentencing as set forth in R.C. 2929.11, as well as the factors relating to the seriousness of the offense and recidivism of the offender under R.C. 2929.12 when sentencing an offender. *State v. Smith,* 3d Dist. No. 2-06-37, 2007-Ohio-3129, ¶26, citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶38. But, under R.C. 2929.12, a sentencing court is not required to use specific language regarding its consideration of the seriousness and recidivism factors. Id., citing *State v. Sharp*, 10th Dist. No. 05AP-809, 2006-Ohio-3448; *State v. Amett* (2000), 88 Ohio St.3d 208, 205, 724 N.E.2d 793; *State v. McAdams*, 162 Ohio App.3d 318, 2005-Ohio-3895, 833 N.E.2d 373; *State v. Patterson*, 8th Dist. No. 84803, 2005-Ohio-2003. Further, there is no requirement in R.C. 2929.12 that the trial court state on the record that it has considered the statutory criteria or even discussed them. Id., citing *State v. Polick* (1995), 101 Ohio App.3d 428, 431, 655 N.E.2d 820; *State v. Gant*, 7th Dist. No. 04-MA-252, 2006-Ohio-1469 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the

trial court to set forth its findings); *State v. Hughes*, 6th Dist. No. WD-05-024, 2005-Ohio-6405.

{¶31} In this assignment of error, Lane summarily argues that *Foster* was applicable at his re-sentencing hearing, however, despite Lane's citation to *Foster*, Lane does not separately argue the particular claimed error nor does he provide any reasons in support of his contentions. App.R. 16(A)(7). Accordingly, we may disregard this assignment of error pursuant to App.R. 12(A)(2). Nevertheless, despite Lane's general citation to *Foster*, we find that the record demonstrates that the trial court did consider *Foster*'s ruling at Lane's re-sentencing hearing in December 2009. At the re-sentencing hearing, the trial court specifically stated that:

> **[t]he Court finds in this particular instance that in making its sentencing in effect reiterating what it had previously sentenced you to. At least *Foster* indicates that the same findings can be made advisory and the Court has reviewed those and makes those same findings, advisory, \* \* \* At the time of the original sentencing before *Foster* there was various findings that had been made and the Court would incorporate those for advisory. But in addition, even if today's law applies in that regard as well, the consecutive sentences imposed herein are as a result of the Court's discretion as well, pursuant to *State v. Johnson*, 116 Ohio State 541 and the finding that – further that the defendant was involved in committing one of the worst form of offenses in which 5 people died.**

{¶32} (Dec. 23, 2009 Tr. at 21-23). Thus, given the fact that the trial court did consider and apply *Foster* to Lane's re-sentencing, we find Lane's arguments meritless.

{¶33} Lane's fourth assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. V

**THE INDICTMENT AGAINST MR. LANE WAS FATALLY DEFECTIVE, AS A RESULT OF WHICH MR. LANE WAS DENIED DUE PROCESS OF LAW AS A STRUCTURAL ERROR OCCURRED, AS WELL AS PLAIN ERROR, AS TO ALL SEVEN (7) COUNTS IN THE INDICTMENT.**

{¶34} In his fifth assignment of error, Lane argues that the indictment issued on April 19, 2000, was flawed in that it failed to appropriately set forth the requisite mental culpability in each count contained therein. In support of his position, Lane relies on the proposition of law stated by the Ohio Supreme Court in *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169. In *Colon*, the Court held that "when an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment." Id. at ¶45.[1]

{¶35} However, the defendant in *Colon* did not plead guilty like Lane did herein, and this Court has previously stated that a guilty plea waives the right to

---

[1] While this Court still maintains its position in this assignment of error, we note that the Ohio Supreme Court recently released *State v. Horner*, Slip Opinion No. 2010-Ohio-3830, in which the Court appears to have overruled its prior holding in *Colon*.

challenge any alleged defects in an indictment. *State v. Gant*, 3d Dist. No. 1-08-22, 2008-Ohio-5406, ¶13. "The plea of guilty is a complete admission of the defendant's guilt." Crim.R. 11(B)(1). Accordingly, "[b]y entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *State v. Kitzler*, 3d Dist. No. 16-02-06, 2002-Ohio-5253, ¶12, citing *State v. Barnett* (1991), 73 Ohio App.3d 244, 248, 596 N.E.2d 1101, quoting *United States v. Broce* (1989), 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927. See, also, *McCarthy v. U.S.* (1969), 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418. Therefore, "[a] criminal defendant who pleads guilty is limited on appeal; he may only attack the voluntary, knowing, and intelligent nature of the plea and 'may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" *State v. Woods*, 3d Dist. No. 1-05-82, 2006-Ohio-2368, ¶14, quoting *State v. Spates* (1992), 64 Ohio St.3d 269, 272, 595 N.E.2d 351, citing *Tollett v. Henderson* (1973), 411 U.S. 258, 267, 93 S.Ct. 1602, 26 L.Ed.2d 235. See, also, *State v. Barton*, 108 Ohio St.3d 402, 2006-Ohio-1324, 844 N.E.2d 307, ¶73; *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶78; *Ross v. Auglaize Cty. Common Pleas Court* (1972), 30 Ohio St.2d 323, 285 N.E.2d 25; *State v. Gant*, 3d Dist. No. 1-08-22, 2008-Ohio-5406,

¶13 (Colon defect waived by guilty plea); *State v. McGinnis,* 3d Dist. No. 15-08-07, 2008-Ohio-5825, ¶26 (same); *State v. Morgan*, 181 Ohio App.3d 747, 2009-Ohio-1370, 910 N.E.2d 1075, ¶28 (same); *State v. Easter*, 2nd Dist. No. 22487, 2008-Ohio-6038, ¶¶26-28 (same); *State v. Haney*, 180 Ohio App.3d 554, 2009-Ohio-149, 906 N.E.2d 472, ¶18 (same); *State v. Smith*, 6th Dist. No. L-07-1346, 2009-Ohio-48, ¶10 (same); *State v. Cain*, 7th Dist. No. 08 MA 123, 2009-Ohio-1015, ¶¶11-12 (same); *State v. Hayden,* 8th Dist. No. 90474, 2008-Ohio-6279, ¶6 (same); *State v. West*, 3d Dist. No. 14-08-34, 2009-Ohio-6160, ¶6; *State v. Banks*, 8th Dist. No. 93880, 2010-Ohio-1762, ¶¶11-12. And, as we stated above in Lane's third assignment of error, we believe that the record clearly supports the finding that Lane entered into his guilty plea in a knowing, intelligent, and voluntary manner, and that he was fully aware of the potential consequences of his plea.

{¶36} Accordingly, Lane has waived any alleged defect in his indictment by pleading guilty to the substantive offenses of aggravated robbery, aggravated arson, and involuntary manslaughter.

{¶37} Lane's fifth assignment of error is, therefore, overruled.

**ASSIGNMENT OF ERROR NO. VI**

**MR. LANE WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILURE TO EXAMINE PRIOR COUNSEL AS WITNESSES [SIC] TO THE MOTION TO WITHDRAW PLEA.**

**{¶38}** In his sixth assignment of error, Lane argues that he was denied effective assistance of counsel from his second attorney, Gregory Donohue, at the February 22, 2001 hearing on his motion to withdraw his guilty plea. Specifically, Lane claims that his second attorney was ineffective because he did not call his prior attorney as a witness at his motion to withdraw hearing. The basis of Lane's motion to withdraw was that his prior attorney had erroneously told him about the amount of prison time he would get as a result of him entering in a guilty plea.

**{¶39}** As stated above, Lane was originally represented by attorney Jerome Doute, who had represented Lane up through Lane's change of plea hearing. Subsequently, on November 16, 2000, Lane filed a motion to withdraw his guilty plea on the basis that his attorney had misinformed him as to how many years in prison he would have to serve. Soon after, on December 29, 2000, attorney Jerome Doute filed a motion to withdraw as counsel, on the basis that privileged conversations with Lane had resulted in Lane placing counsel in a position that further action would result in a violation of the disciplinary rules. On January 11, 2001, following a hearing on the matter, the trial court granted Doute's motion, and then appointed attorney Gregory Donohue to represent Lane. On February 22, 2001, a hearing was held on Lane's motion to withdraw, and after the presentation of evidence, the trial court overruled Lane's motion.

**{¶40}** Lane now argues that his second attorney, Donohue, was ineffective because he did not call Doute as a witness in order to question him as to what advice he had given Lane with respect to the consequences of his guilty plea.

**{¶41}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole* (2001), 92 Ohio St.3d 303, 306, 750 N.E.2d 148, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland*, 466 U.S. at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965. Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. See *State v. Bradley* (1989), 42 Ohio St.3d 136, 141-42, 538 N.E.2d 373, quoting *State v. Lytle* (1976), 48 Ohio St.2d 391, 396, 358 N.E.2d 623. Prejudice results when "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bradley*, 42 Ohio St.3d at 142, citing *Strickland*, 466 U.S. 691. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bradley*, 42 Ohio St.3d at 142; *Strickland*, 466 U.S. at 694.

**{¶42}** Here, Lane claims that if his second attorney had called his first attorney as a witness, it would have supported his claim that his first attorney had given him bad advice. As a result, Lane now claims that he was prejudiced because he would not have pled if he would have known that he could get more than seven years in prison. However, "[t]he decision [of] whether to call a witness is a trial tactic that generally will not sustain a claim of ineffective assistance." *State v. Payton* (1997), 124 Ohio App.3d 552, 559, 706 N.E.2d 842. Despite Lane's speculations that his first attorney believed that he would only get seven years in prison, Lane has failed to point to any evidence to support his claim. Even if it were true, though, any alleged errors concerning the possible sentence made by his first attorney would not have been prejudicial to Lane as he was given the correct information, both verbally and in writing, before he signed the plea agreement and changed his plea. Furthermore, we note that his second attorney presented evidence at the hearing and argued in favor of Lane's position. Thus,

the failure to call his first attorney as a witness may have been trial strategy which we will not find to be ineffective.

{¶43} Lane's sixth assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. VII

**THE CONVICTIONS FOR COUNT 1 AND/OR COUNT 11 SHOULD HAVE MERGED WITH THE CONVICTION(S) FOR COUNT(S) III THROUGH VII.**

{¶44} In his last assignment of error, Lane argues that the aggravated arson conviction or the aggravated robbery conviction should have been merged into the involuntary manslaughter convictions, on the basis that the crimes are allied offenses of similar import.

{¶45} First of all, Lane once again summarily argues that one of the convictions should have merged with the involuntary manslaughter conviction because they were allied offenses, and does not separately argue the particular claimed error nor does he provide any reasons in support his contentions. App.R. 16(A)(7). Accordingly, we may disregard this assignment of error pursuant to App.R. 12(A)(2). Nevertheless, despite Lane's general argument, we find that the record demonstrates that his involuntary manslaughter convictions were merged with his aggravated arson conviction on the basis that they were allied offenses of similar import. While we note that at the re-sentencing hearing the trial court sentenced Lane on each conviction prior to merging the involuntary manslaughter

convictions and the arson conviction, the trial court later explicitly stated that those "offenses merge with the same and similar animus." (Dec. 23, 2009 Tr. at 22). And since the trial court also ran the involuntary manslaughter and arson convictions concurrently, we find that no harm resulted from its failure to merge prior to sentencing. *State v. Tuggle*, 6th Dist. No. L-07-1284, 2008-Ohio-5020, ¶138. Thus, we find Lane's argument meritless.

{¶46} Lane's seventh assignment of error is, therefore, overruled.

{¶47} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. concurs.**

**ROGERS, J., concurs, concurs in Judgment Only on Assignment No. 7.**

**/jnc**